
RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 2/21/06

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 98-2316 |
| VERSUS | JUDGE MELANCON |
| 280.18 ACRES OF LAND, MORE OR LESS, SITUATED IN ST. LANDRY PARISH, STATE OF LOUISIANA, AND LEILA FERGUSON FRAZIER, ET AL., AND UNKNOWN OWNERS | MAG. JUDGE METHVIN LAND COMMISSION |

## REPORT AND RECOMMENDATION

The trial of this matter came before the Atchafalaya Basin Land Commission (the "Commission") on November 30, 2005, for a compensation hearing.

By Order dated July 1, 1992, pursuant to provisions of Rule 71A(h) of the Federal Rules of Civil Procedure, United States District Court for the Western District of Louisiana, Lafayette-Opelousas Division, through its Chief Judge, John M. Shaw, filed an Order appointing the Atchafalaya Basin Land Commission and issuing legal instructions to the Commission. The purpose of the Commission is to "determine the issue of just compensation in a condemnation proceeding, as it relates to actions that were filed in the Western District of Louisiana relating to the condemnation of property in the Parishes of Iberia, St. Landry, St. Mary, and St. Martin, Louisiana." At the conclusion of the hearing, the Commission shall "file with the Court in the nature of an award stating specific findings as to the matters on which the evaluations were based and illustrating how they applied the principals of law in reaching their ultimate conclusions as to each tract." (Order, pp. 3 - 4)

In the present case, the United States of America filed a Complaint in Condemnation for the purpose of obtaining a perpetual and assignable right and easement in, on, over, and across Tract Nos. 933E-1 and 934-1, as more particularly described therein, prohibiting:

1) The conversion or development of said land from the existing uses (as described in Schedule B-1 and as reflected on a map which is filed in the records of the U.S. Army Engineer District, New Orleans), to other uses;

2) The construction or placement of new permanently habitable structures (existing permanently habitable structure(s) are described in Schedule B-1 and are reflected on a map which is filed in the records of the U. S. Army Engineer District, New Orleans);

3) The construction or placement of all other new structures, including camps (existing camp(s) / structure(s) are described in Schedule B-1 and are reflected on a map which is filed in the records of the U. S. Army Engineer District, New Orleans), situated or located on said land without the prior written approval of the District Engineer, U. S. Army Engineer District, New Orleans, or his duly authorized representative, but specifically excluding any structures used in the exploration, development, and/or production of oil, gas, and all other minerals, permitting, however, the owner to rebuild a destroyed structure under the existing permit.

4) Any timber operation which involves:

   a) Removal of any bald cypress greater than 42 inches in diameter at 10 feet above the ground. (The timber included in this prohibition will not be included in basal area calculations on other cypress restrictions below).

   b) Removal of oak, ash, and sweet pecan less than 20 inches in diameter at 12 inches above the ground, and water tupelo and bald cypress less than 24 inches in diameter at 2 feet above the ground, unless 40 square feet of basal area, per acre, in any combination of these species, is maintained.

Exceptions to timber harvesting restrictions, contained in paragraph 4, which promote fish and wildlife preservation by regeneration of desired timber species, involve disease and insect control, or involve salvage removal of timber, may be allowed with the written consent of the District Engineer, New Orleans District, or his duly authorized representative.

Reserving, however, unto the owners, their heirs, and assigns all oil, gas, and mineral rights; and further reserving all such other rights and privileges as my be used and enjoyed without interfering with or abridging the rights and easements hereby acquired, subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines.

The United States of America, insofar as Tract Nos. 933E-2, 933E-3, and 934E-2, as more particularly set forth in the Complaint, sought a perpetual and assignable right and easement in, on, over, and across the land described therein to overflow by flood waters of the Mississippi River, the Atchafalaya River, or other tributaries, or any other flood waters, at any time, and for any length of time and to any elevation; and prohibiting:

2

1) The conversion or development of said land from the existing uses (as described in Schedule B-1 and as reflected on a map which is filed in the records of the U. S. Army Engineer District, New Orleans), to other uses;

2) The construction or placement of new permanently habitable structures (existing permanently habitable structure(s) are described in Schedule B-1 and are reflected on a map which is filed in the records of the U. S. Army Engineer District, New Orleans);

3) The construction or placement of all other new structures, including camps (existing camp(s) / structure(s) are described in Schedule B-1 and are reflected on a map which is filed in the records of the U. S. Army Engineer District, New Orleans), situated or located on said land without the prior written approval of the District Engineer, U. S. Army Engineer District, New Orleans, or his duly authorized representative, but specifically excluding any structures used in the exploration, development, and/or production of oil, gas, and all other minerals; permitting, however, the owner to rebuild a destroyed structure under the existing permit.

4) Any timber operation which involves:

   a) Removal of any bald cypress greater than 42 inches in diameter at 10 feet above the ground. (The timber included in this prohibition will not be included in basal area calculations on other cypress restrictions below).

   b) Removal of oak, ash, and sweet pecan less than 20 inches in diameter at 12 inches above the ground, and water tupelo and bald cypress less than 24 inches in diameter at 2 feet above the ground, unless 40 square feet of basal area, per acre, in any combination of these species, is maintained.

Exceptions to timber harvesting restrictions, contained in paragraph 4, which promote fish and wildlife preservation by regeneration of desired timber species, involve disease and insect control, or involve salvage removal of timber, may be allowed with the written consent of the District Engineer, New Orleans District, or his duly authorized representative.

Reserving, however, unto the owners, their heirs, and assigns all oil, gas, and mineral rights; and further reserving all such other rights and privileges as may be used and enjoyed without interfering with or abridging the rights and easements hereby acquired; subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines.

The United States of America introduced into evidence the appraisal report dated May 10, 1999, of Max J. Derbes, Jr., MAI, a Louisiana State Certified General Real Estate Appraiser (Certificate No. 126) and Carr T. Dowell, III, a Louisiana State Certified General Real Estate Appraiser (Certificate No. 628) setting forth the United States of America's position as to the market value of the easements taken as of December 8, 1998. The Opinion reflects the following market value of the easements as of December 8, 1998, estimated to be as follows:

3

TRACT NO. 933E-1
Value Before                                        $ 69,890
Value After                                         $ 56,525
Value of Easement (Tract No. 933E-1)                $ 13,365

TRACT NO. 933E-2
Value Before                                        $146,245
Value After                                         $117,610
Value of Easement (Tract No. 933E-2)                $ 28,635

TRACT NO. 933E-3
Value Before                                        $ 11,085
Value After                                         $  8,930
Value of Easement (Tract No. 933E-3)                $  2,155

TRACT NOS. 933E-1, E-2, E-3
Value Before                                        $227,200
Value After                                         $183,065
Value of Easement (Tract Nos. 933E-1, E-2, and E-3) $ 44,155

TRACT NO. 934E-1
Value Before                                        $  7,905
Value After                                         $  6,390
Value of Easement (Tract No. 934E-1)                $  1,515

TRACT NO. 934E-2
Value Before                                        $ 18,935
Value After                                         $ 15,085
Value of Easement (Tract No. 934E-2)                $  3,850

TRACT NO. 934E-1 and E-2
Value Before                                        $ 26,840
Value After                                         $ 21,475
Value of Easement (Tract Nos. 934E-1 and E-2)       $  5,365

TOTAL PROPERTY
Value Before                                        $254,060
Value After                                         $204,540
Value of Easements                                  $ 49,520

The United States of America also introduced into evidence the Written Declaration of Judith Y. Gutierrez dated November 10, 2005, an appraiser for the United States Corp. of Engineers, New Orleans District. Ms. Gutierrez attested that she was responsible for processing Administrative Appraisal Reviews for appraisal reports prepared under contract for properties that would be acquired by the United States in Condemnation proceedings. In that capacity, her responsibilities include assuring that the appraisal reports comply with contract requirements, are mathematically accurate,

4

and/or in compliance with the Uniform Appraisal Standards for Federal Land Acquisitions and the Uniform Standards of Professional Appraisal Practices (USPAP). In such capacity, she further attested that she conducted an administrative appraisal desk review on the appraisal introduced into evidence, and found that the appraisal report for the tracts complies with contract requirements, is mathematically accurate, and is in compliance with the Uniform Appraisal Standards for Federal Land Acquisitions and the USPAP.

No oral testimony was submitted by the United States of America. No evidence at all was submitted by any of the defendants at the compensation hearing.

Therefore, based on the evidence submitted, the Commission finds the value of the easements to be those reflected in the above-referenced appraisal report dated May 10, 1999, a copy of which is attached hereto and made a part hereof.

THUS, READ, RENDERED, AND SIGNED by the members of the Commission, this 21st day of February, 2006.

_____
DAVID W. GRONER
Chairman, Land Commission

_____
PHILIP H. BOUDREAUX
Commissioner

_____
CHARLES T. SNYDER
Commissioner